CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

SIMONE STEWART,
Plaintiff,
v.
ASHLEY E. SWEET, et al.,
Defendants.

Civil Action No. 7:25-cv-00512

By: Elizabeth K. Dillon
Chief United States District Judge

**MEMORANDUM OPINION**

Plaintiff Simone Stewart was driving her husband in March 2024 when their vehicle was pulled over by a Roanoke County police officer. At the time, there was a protective order in place prohibiting her husband from contacting or being around her. During the stop, Stewart allegedly lied to the police about her husband's identity and encouraged him to provide an incorrect social security number. He was nonetheless arrested for violating the protective order. After she later complained to the Roanoke County police about the treatment of her husband during the stop, she was then charged with aiding and abetting the violation of a protective order. The case proceeded to trial, and the state-court judge dismissed the charges after hearing all the evidence.

In this case, Stewart sues the police officers who were involved in the stop and prosecution, and she sues the prosecutors who obtained a grand jury indictment against her and conducted the trial. She alleges malicious prosecution claims under both 42 U.S.C. § 1983 and Virginia law, and she asserts claims of gross negligence and false imprisonment/false arrest under Virginia law. Two groups of defendants have filed separate motions to dismiss, seeking dismissal of all claims against them. The motions are fully briefed, were argued at a hearing before the court, and are ripe for disposition. The court will address the motion brought by the

police officer defendants by a separate opinion and order.

In this opinion, the court addresses only the motion of defendants Ashley E. Sweet, Brian Holohan, and John Does 2, 3, and 4 (collectively "the Prosecution Defendants"). (Dkt. No. 11.) Sweet was the prosecuting attorney in Stewart's criminal case. Holohan was at all relevant times, and remains still, the Commonwealth's Attorney for Roanoke County. The three John Does are alleged to have been employed by the Roanoke County Commonwealth Attorney's Office.[1] The complaint does not identify any specific actions taken by any one of them. It mostly just groups together all these defendants when alleging that they violated Stewart's rights.

Because the court concludes that the alleged actions of the Prosecution Defendants are protected by absolute prosecutorial immunity, the court will grant the motion to dismiss and will dismiss all claims against the Prosecution Defendants with prejudice.

## I. BACKGROUND[2]

Stewart was charged in state court with aiding and abetting a violation of a protective order, where the protective order prohibited her husband, Cedric Stewart ("Cedric"), from contacting or being around her. The protective order was for her sole benefit and contained no prohibitions regarding her conduct. (Compl. ¶ 18.) After obtaining the protective order in December 2023, Stewart and her husband reconciled. (*Id.* ¶¶ 15, 17.)

At the time of the events in this case, which began on March 24, 2024, the couple was not aware that the order remained in effect, although it did. After the events in this case, the

[1] The complaint refers to the Roanoke County Attorney's Office, but based on context, it is clear the intent was to identify the Roanoke County *Commonwealth's* Attorney's Office, and defendants acknowledge as much. (Mem. Supp. Pros. Defs.' Mot. Dismiss 2 n.2, Dkt. No. 12.) Stewart's counsel confirmed this at the hearing.

[2] Unless otherwise noted, the factual background below comes directly from Stewart's complaint. For context, the court also includes some information from the judicial records in Stewart's state-court case, which Stewart's counsel agreed could be considered by the court when ruling on the motions to dismiss. The Prosecution Defendants, however, have expressly disclaimed reliance on any records outside of the complaint. At their counsel's urging, the court does not consider those documents in ruling on their motion to dismiss.

protective order was ultimately dissolved/revoked. (*Id.* ¶ 17.)

On March 24, 2024, and despite the existence of the order, Stewart was driving Cedric in a vehicle, when she was pulled over by the Roanoke County police for an expired registration. During the stop, the officer discovered the still-in-effect protective order.

Both Stewart and Cedric were charged with criminal offenses. He was arrested the day of the stop and charged with misdemeanor violations of the protective order, charges she calls "appropriate and lawful" because "the protective order prohibited him" from being in the same car with her. (Compl. ¶ 20.) One of the charges ultimately was nolle prossed, and he was found guilty of the other. (*Id.* ¶ 21.)

Stewart's complaint alleges that the resolution of Cedric's charges should have concluded the matter, but defendants "decided to engage in unlawful conduct to target" her. (*Id.* ¶ 22.) At some point, she had called the Roanoke County police to complain about the treatment of her husband on March 24. She believed that the officers were unnecessarily rough and rude. (*Id.* ¶ 23.) The County performed an investigation and ultimately determined that the officers acted appropriately during the encounter. (*Id.* ¶ 25.)

After the investigation was concluded, however, Stewart alleges that the officers "colluded/conspired and inexplicably decided to charge Mrs. Stewart with a felony" for the same events that led to her husband's charges.[3] She asserts that the officers and the defendants from the Commonwealth Attorney's office "worked in tangent to unlawfully conspire to pursue a

[3] The complaint repeatedly refers to Stewart as being charged with a felony, but the charging documents show that she was charged with a misdemeanor offense. And as the Prosecution Defendants note, the court may take judicial notice of those documents, *Colonial Penn Ins. Co. v. Coil*, 887 F.2s 1236, 1239–40 (4th Cir. 1989). (*See* Pros. Defs.' Mem. Supp. Mot. to Dismiss 3 n.3 (noting that "the public records establish that Stewart was indicted for a misdemeanor, not a felony as the [c]omplaint alleges").) Stewart was charged with a violation of Virginia Code § 16.1-253.2 and no subsection of that statute was referenced. (Dkt. Nos. 10-3 & 10-4.) But none of the subsections other than A would apply here, and subsection A states that a violation is a Class 1 misdemeanor for a first offense. Also, the state court judge for Stewart's trial, Judge Dorsey, and Stewart's counsel also discussed at trial that the maximum term of imprisonment was 12 months, thus indicating that it was not a felony. (Trial Tr. 8–9, Dkt. No. 10-2.)

direct indictment for felony charges for a crime that doesn't exist." (*Id.* ¶ 28.) She alleges that the charges were brought in retaliation for her complaint about the officers and because she "dared to exercise her free speech rights to complaint about officer conduct." (*Id.* ¶¶ 26–28, 34.)

The indictment against Stewart was obtained on June 7, 2024, and the indictment states it was "found on the evidence of Officer J. Beckner." (*Id.* ¶ 29.) Stewart's trial occurred on July 29, 2024, and concluded the following day via a written dismissal order entered by Judge Dorsey. (*Id.* ¶¶ 29–30.) The complaint alleges, "upon information and belief," that Judge Dorsey admonished the County and its counsel that the law "does not provide any mechanism/legal claim of any kind to charge the petitioner with an alleged violation of a protective order under which she is the protected party."[4] (Compl. ¶ 32.) As a result of the "improper and malicious prosecution," Stewart suffered great harm including having to hire counsel, as well as "great emotional, pain, fear, mental suffering, and humiliation." (*Id.* ¶ 36.)

Stewart filed this civil rights suit, seeking $2 million in compensatory and punitive damages, as well as attorney's fees, interest, and costs. (*Id.* at 10.) She asserts claims against two groups of defendants, and the claims are all brought against defendants in their individual capacities. Both groups include some John Doe defendants. The Prosecution Defendants are

---

[4] A video from Stewart's trial and the entire transcript were provided as exhibits by the Officer Defendants. The only officer who testified at her trial was Officer Campbell, who is not named as a defendant, except perhaps as one of the John Doe officers. At trial, the Commonwealth offered evidence that Stewart helped her husband deceive the officers by: (1) volunteering the existence of the protective order, but stating that the man in the car was not her husband (and stating a second time that the man in the car with her was not her husband); and (2) encouraging him to give a false social security number (changing the last digit after he had given the correct one, which number he then adopted). (Trial Tr. 24–26, Dkt. No. 10-2 (transcript of video from traffic stop, which was played in Stewart's criminal trial).)

These documents do not affect the court's resolution of the Prosecution Defendants' motion to dismiss, but the court notes that they contradict some of the complaint's allegations. For example, the complaint's description of Judge Dorsey's ruling—that he ruled there was no such crime—was the argument presented by Stewart's criminal defense counsel. But Judge Dorsey never said that such a crime did not exist. In an exchange with prosecutor Sweet, he questioned whether a wife's merely agreeing to meet with a husband against whom she has a protective order would suffice. (Trial Tr. 33–34, Dkt. No. 10-2.) Judge Dorsey also suggested at one point that Stewart's conduct might support an obstruction charge. (*Id.* at 31.) But Judge Dorsey's reasoning for the dismissal was that Stewart did not *do enough* to "aid and abet," not that such a crime did not exist. (*Id.* at 37–38.)

Sweet, Holohan, and three John Does. As noted, Sweet was the prosecutor at Stewart's trial, although that is not directly alleged in the complaint. John Does 2, 3, and 4 are alleged to have been employed by the Roanoke County Commonwealth Attorney's Office and/or the Commonwealth of Virginia. The second group, "the Officer Defendants," consists of defendant Joshua Paul Beckner, who sought the indictment against her and may have been one of the arresting officers (although that is not alleged in the complaint), and John Does 5, 6, and 7,[5] all of whom are alleged to have been employed by the "Roanoke County Police Department and/or Sheriff's Office and/or the Commonwealth of Virginia." (Compl. ¶¶ 11–13.)

Stewart's complaint asserts the following four claims,[6] all brought against all defendants:

Count I - § 1983 malicious-prosecution claim
Count II – state-law malicious-prosecution claim
Count III – state-law gross negligence
Count VI – state-law claim of false imprisonment/false arrest.

(*See generally id.*) In their motion to dismiss, the Prosecution Defendants seek dismissal of all counts against them. (Dkt. No. 11.)

## II. ANALYSIS

### A. Federal Rule of Civil Procedure Rule 12(b)(6)

A Rule 12(b)(6) motion tests a pleading's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007).

---

[5] The complaint also refers to John Doe 1 also as "Officer J. Beckner." (Compl. ¶ 7.) At the hearing, Stewart's counsel confirmed that John Doe 1 is the same Officer Beckner who is named in the complaint, and the court noted that John Doe 1 would be dismissed. The court will dismiss John Doe 1 in conjunction with ruling on the Officer Defendants' motion to dismiss.

[6] At the hearing, Stewart's counsel suggested she also intended to bring a retaliatory-prosecution claim, but that claim is not identical to a malicious-prosecution claim and has different elements. *See Henderson v. McClain*, No. 7:19-cv-00685, 2020 WL 6136850, at *5 (W.D. Va. Oct. 19, 2020), *aff'd* No. 20-2197, 2022 WL 704353 (4th Cir. Mar. 9, 2022) (describing the two claims as "analytically and legally distinct" and discussing the elements of each). For purposes of the court's ruling herein, which is premised only on absolute prosecutorial immunity, it does not matter which of the two claims is being asserted. The Prosecution Defendants are immune from both.

To survive, a pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The court must construe all facts and reasonable inferences "in the light most favorable to the nonmoving party," but need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

**B. Issues Related to Service of Defendants**

In their motion to dismiss, Sweet and Holohan first move for dismissal under Federal Rule Civil Procedure 12(b)(5). They properly note that service is required within 90 days of the filing of the complaint. Fed. R. Civ. P. 4(m). And where the sufficiency of service is challenged, the burden shifts to the plaintiff to establish the validity of service. *Urrego v. Samuel I. White, P.C.*, No. 3:17CV437 (MHL), 2018 WL 4524106, at *6 (E.D. Va. July 3, 2018), *report and recommendation adopted sub nom. Urrego v. White*, No. 3:17CV437, 2018 WL 3586316 (E.D. Va. July 26, 2018).

Here, Stewart did not serve defendants until 92 days after the filing of the complaint. Her counsel admits that service was two days late, explaining that he mistakenly calendared the period as three months instead of 90 days. (Pl.'s Resp. to Pros. Defs.' Mot. Dismiss, 2, Dkt. No. 19.) He "apologizes" and urges the court, however, to grant Stewart an extension after the fact. Counsel also notes that, if the case is dismissed without prejudice, he would immediately refile and serve defendants, and he emphasizes that there has been no harm to defendants from the minor delay.

Rule 4(m) requires the court to grant an extension of time for service on a showing of "good cause." The rule also permits the court, in its discretion, to grant an extension even in the absence of good cause. *Gelin v. Shuman*, 35 F.4th 212, 218 (4th Cir. 2022). The court does not

find good cause here, because the "inadvertence of counsel" is not generally good cause. *Id.* (quoting 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice & Procedure* § 1137 (4th ed. 2015)). Nonetheless, and upon consideration of all the facts in the case, the court will exercise its discretion to allow an extension. There is no gross lack of diligence, the delay was only two days, and no prejudice has been shown to defendants. Thus, the court declines to dismiss on the grounds of untimely service. Instead, it will grant plaintiff an extension of time to service, and it deems service on Sweet timely.

Defendants also argue that Stewart failed to properly serve Holohan, which Stewart appears to concede. But given the court's ruling in Holohan's favor on absolute prosecutorial immunity, and based on statements of counsel at the hearing, it appears that Honohan is willing to waive any defect in service and be bound by the court's ruling on the motion to dismiss. Thus, for purposes of ruling on the motion to dismiss, the court will consider Honohan properly served.

**C. Absolute Prosecutorial Immunity**[7]

The primary ground for dismissal argued by the Prosecution Defendants is that absolute prosecutorial immunity requires the dismissal of all the claims against them, because all of Stewart's claims (the Fourth Amendment claim under § 1983, any retaliatory-prosecution claim,[8]

---

[7] The Prosecution Defendants raise other grounds for dismissal in their motion, and at least some of those are meritorious, as well. But given the court's ruling on absolute immunity, it does not address those other arguments. Their arguments include that: (1) Stewart improperly "lumps" defendants together and does not specify which defendant took what actions, relying in part on *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023); (2) Stewart fails to allege personal participation by Sweet or Holohan; (3) Stewart fails to state a supervisory liability claim against Holohan; (4) the malicious-prosecution claims must be dismissed because they require an absence of probable cause, and here, a grand jury returned in indictment against Stewart, which defendants describe as the "epitome of probable cause"; (5) the gross negligence claim fails because it lacks factual support and because securing an indictment shows that the prosecutors did not act with an "absence of slight diligence," as required; and (6) the false imprisonment/false arrest claim fails because these defendants did not arrest her or cause her arrest and because the prosecution was initiated by lawful process, especially because of the grand jury's involvement. (Pros. Defs.' Mem. Supp. Mot. Dismiss 6–9, 11–15, 16–19.)

[8] As noted *supra* at note 6, Stewart has not directly pled a retaliatory prosecution claim, which is separate and distinct from a malicious prosecution claim, but she has alleged facts that suggest such a claim. Even if her complaint had expressly included that claim, it would be barred by prosecutorial immunity as against the Prosecution Defendants.

and the state-law claims for malicious prosecution, gross negligence, and false imprisonment), are based on actions they performed in their role as prosecutors and advocates in the judicial system. They contend that the doctrine under federal law bars the federal claim, and Virginia's similar immunity doctrine bars all the state-law claims.

Federal prosecutorial immunity protects "'the vigorous and fearless performance of the prosecutor's duty' that is so essential to a fair, impartial criminal justice system." *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)). "As representatives of the people, prosecutors have a responsibility to enforce the laws evenhandedly and to exercise independent judgment in seeking justice." *Id.* (citing *Imbler*, 424 U.S. at 423–24). "The public trust of the prosecutor's office would suffer" if prosecutors had to consider their own potential liability for damages in making every decision. *Imbler*, 424 U.S. at 424–25); *Van de Kamp v. Goldstein*, 555 U.S. 335, 341–42 (2009).

Absolute prosecutorial immunity—as opposed to qualified immunity—attaches only to actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31; *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993). Thus, prosecutors are absolutely immune "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430–31). Absolute immunity also extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 491 (quoting *Imbler*, 424 U.S. at 431 n.33).

To determine whether a particular act is "intimately associated with the judicial phase," the court employs a functional approach, looking at "the nature of the function performed," without regard to "the identity of the actor who performed it," "the harm that the conduct may have caused," or even "the question whether it was lawful." *Buckley*, 509 U.S. at 269, 271.

Functions performed as a judicial officer or advocate, commonly referred to as advocative functions, are entitled to absolute prosecutorial immunity. *Id.*

In *Nero*, the Fourth Circuit synthesized the Supreme Court's holdings in this area, listing functions the Court has held to be advocative:

> A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, *Buckley*, 509 U.S. at 273, decides to seek an arrest warrant, *Kalina*, 522 U.S. at 130, prepares and files charging documents, *id.*, participates in a probable cause hearing, *Burns*, 500 U.S. at 492, and presents evidence at trial, *Imbler*, 424 U.S. at 431.

890 F.3d at 118.[9]

Virginia law is nearly identical, and any differences are not relevant here. Indeed, the Supreme Court of Virginia has quoted from cases like *Imbler* is setting forth the scope of the state counterpart to federal prosecutorial immunity. *E.g.*, *Andrews v. Ring*, 585 S.E.2d 780, 784–85 (Va. 2003) (quoting *Imbler*, 4234 U.S. at 422–23). *Andrews* reasoned that a prosecutor's involvement in the initiation of the criminal process, regardless of the method, is entitled to absolute immunity because that action is intimately connected with his or her role in judicial proceedings. *Id.* at 785.

Applying these principles here, the court concludes that the Prosecution Defendants' alleged actions, as set forth in the complaint, fall squarely within advocative functions and fall squarely within Virginia law entitling them to absolute immunity. Stewart alleges that they colluded with police officers to bring charges against her. And she alleges that they charged her

---

[9] This is to be contrasted with non-advocative functions, which would entitle a prosecutor only to qualified immunity. The lesser immunity applies when "a prosecutor does not act as an advocate, but rather in an investigative or administrative capacity, when she gives legal advice to police *during an investigation*, investigates a case before a probable cause determination, and personally attests to the truth of averments in a statement of probable cause." *Nero*, 890 F.3d at 118 (internal citations omitted and emphasis added). Likewise, a prosecutor is not entitled to absolute immunity for conducting a press conference or fabricating evidence concerning an unsolved crime. *Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999).

and then prosecuted her for something that was not a crime. Decisions such as whether to bring a charge and any actions taken in court in prosecuting that charge are quintessentially prosecutorial decisions for which a prosecutor is entitled to absolute immunity. *Imbler*, 424 U.S. at 430–31 (absolute immunity applies to actions of "initiating a prosecution and . . . presenting the state's case"). The same is true under Virginia law. *See, e.g.*, *Andrews*, 585 S.E.2d at 785 (holding that Commonwealth's Attorneys are entitled to absolute immunity for the initiation of criminal process).

Stewart offers little resistance to this conclusion and offers no legal authority to support allowing the claims to go forward. Instead, she primarily appeals to policy-type arguments, reasoning:

> The bringing of made-up charges for crimes that do not exist cannot be covered by the immunity claimed. If it is, the law must change- as prosecutors are now attempting to use that shield as a sword to violate fundamental rights.

(Pl.'s Opp'n to Pros. Defs.' Mot. Dismiss 8, Dkt. No. 19.)

But Stewart misunderstands the purposes of absolute immunity. It does not exist to protect rogue or ill-intentioned prosecutors, even though that occasionally might be the result of it. The Supreme Court has explained:

> Absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special "esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself."

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). Thus, a prosecutor is entitled to absolute immunity even if he or she acted "with an improper state of mind or improper motive." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005); *see also Brown v. Daniel*, 230 F.3d 1351, 2000 WL 1455442, at *2 (4th Cir. Sept.

29, 2000) (unpublished table decision) (per curiam) ("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."); *Andrews*, 585 S.E.2d at 784 (noting that absolute immunity for prosecutors, which is based on judicial immunity, applies "even when they act maliciously or corruptly or in excess of their jurisdiction"). As only one such illustration of this principle being applied even to intentional misconduct, the Fourth Circuit has held that a prosecutor's alleged misconduct in fabricating evidence for use at trial and in destroying exculpatory documents while a motion for new trial was pending were both shielded by absolute immunity. *Annappereddy v. Pascale*, 996 F.3d 120, 139–42 (4th Cir. 2021). And in *Imbler*, the Court expressly recognized that absolute immunity applied to the knowing use of false testimony before the grand jury and at trial. 424 U.S. at 421–24.

As the *Imbler* Court explained, the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. *Imbler*, 424 U.S. at 427–29. And even a prosecutor shielded by absolute immunity may be subject to criminal and professional sanctions for prosecutorial abuses. *Id.* at 429; *Malley*, 475 U.S. at 343, n.5.

Stewart also insists that the crime with which she was charged is not a crime under Virginia law because a person who is the beneficiary of a protective order cannot violate it. She emphasizes that the point of that criminal statute is to protect the people who are the beneficiaries of a protective order. And at the hearing before this court, Stewart's counsel likened the prosecution here to a case where a child who is abused is charged with aiding and abetting his own abuse. To take another example, Stewart is claiming that this is a case where a prosecutor tells a grand jury that some non-criminal action is a crime (e.g., wearing a purple shirt on a Tuesday), secures an indictment based on that, and then prosecutes it.

Stewart's characterization of the prosecutors here simply making up a crime that does not exist is not accurate. There is, in fact, a Virginia statute allowing someone to be charged with violating a protective order. And aiding and abetting liability is a well-established means of charging someone under state law, and Virginia has allowed its application even in the case of misdemeanors. *See Wade v. Commonwealth*, 696 S.E.2d 258, 260 (Va. Ct. App. 2010).

Furthermore, while it is not common, and may even be improper, there have been other instances—both in Roanoke and in at least one case nationwide—of this or a similar charge being brought. *See* Trial & Sent. Order, *Commonwealth v. Lindamood*, No. CR22000208 (Va. Cir. Ct. (Roanoke Cnty.) Nov. 9, 2022)) (imposing sentence on person protected by a protective order who pled guilty to violating the protective order);[10] *see also Henley v. Iowa Dist. Ct. for Emmet Cnty.*, 533 N.W.2d 199, 202 (Iowa 1995) (concluding that protected party was properly charged with aiding and abetting the violation of a no-contact order issued to her partner). *But see State v. Lucas*, 795 N.E.2d 642, 648 (Ohio 2003) (construing an Ohio statute and considering public-policy concerns in holding that the protected subject of a domestic violence protection order was immune from prosecution for complicity in the former husband's violation of the order); *Patterson v. State*, 979 N.E.2d 1066 (Ind. App. 2012) (holding same under Indiana law). And a state statute might also expressly prohibit arresting a person protected by a protective order for a violation of that order, *e.g.*, Tex. Penal Code § 25.071(c), but the Virginia statute does not contain such an express prohibition. On balance, then, the charges against Stewart were not entirely without any basis and made up.

Even assuming that the party protected by a protective order cannot properly be charged

---

[10] Relevant documents from *Lindamood*, which are publicly available documents, are attached to the Officer Defendants' Motion to Dismiss. (Dkt. Nos. 10-9 to 10-11.) At the hearing, Stewart correctly pointed out that the defendant in *Lindamood* pled guilty to that charge, and that neither the underlying facts have been presented nor is there any evidence that the propriety of the charge was ever raised or addressed by the court. But it is at least some evidence that the charge here was not completely imagined for the first time in Stewart's case.

in Virginia with violating that order, at most this should be viewed as the prosecutors making an incorrect decision about which crime to charge based on Stewart's conduct,[11] or incorrectly determining that Stewart's conduct constituted a crime. But those decisions and determinations are nonetheless advocative tasks connected with the judicial process and are still entitled to immunity. *Cf. McKenna v. Police Chief*, Case No. 1:22-cv-00002, 2022 WL 15046726, at *10–12 (W.D. Va. Oct. 26, 2022) (holding that a prosecutor was entitled to absolute immunity where he advised police that an individual could be charged with obstruction of justice, because he acted in the context of "professionally evaluating the evidence assembled by the officer defendants and in approving of a criminal prosecution," even though the conduct for which the individual was arrested did not give the officers probable cause to believe he had committed the crime). Thus, even if erroneous and even if they acted improperly in charging Stewart, the Prosecutor Defendants were acting as advocates within the judicial system and are entitled to immunity.

Stewart's final argument is that neither she nor the court can determine "what type of category of conduct" the defendants engaged in, because of the "secretive nature" of their conduct, which has left plaintiff "unable to detail the activities [of] each defendant." (Pl.'s Opp'n to Pros. Defs.' Mot. Dismiss 8.) But there are no allegations in the complaint that Stewart, Holohan, or any of the John Does took any actions that would be outside the prosecutor's role as advocate, and no facts to suggest that they may have taken any such actions. Because the allegations in the complaint do not assert that the Prosecution Defendants did anything other than (at most) decide to bring a charge (even if in "collusion" with police) and to

[11] Stewart's conduct as alleged at trial—which included lying to police about her husband's identity, after acknowledging the existence of the protective order—might have been chargeable as some other offense. Indeed, even Judge Dorsey suggested that perhaps her conduct constituted obstruction of justice. *See also* Va. Code § 18.2-460(D) (making it a Class 1 misdemeanor to "knowingly and willfully make[] any materially false statement or representation to a law-enforcement officer . . . who is in the course of conducting an investigation of a crime by another").

prosecute it, they are entitled to absolute immunity. That is true even if the real reason for bringing the charges was retaliation for First Amendment speech or some other nefarious reason. *See Brown*, 2000 WL 1455442, at *2; *Andrews*, 585 S.E.2d at 784.

## III. CONCLUSION

For the reasons discussed above, the court will grant the Prosecution Defendants' motion to dismiss, and it will dismiss all claims against them based on absolute prosecutorial immunity. An appropriate order will be entered.

Entered: September 30, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge